. DANIEL ANGELL *v.* ABEL ROBBINS & others.

When upon an application by a committed debtor, to a justice of the peace, for a second citation to his creditor to show cause why he should not be admitted to the poor debtor's oath, it appears, that, according to the requirement of the 18th section of the " Act for the relief of poor persons imprisoned for debt," proof was exhibited to the justice of a change of circumstances since the debtor's first citation, satisfactory to him, and such change, recited in the second citation to the creditor, is of such a nature that it might justify the grant of such second citation, the decision of the justice, upon the proof exhibited, signified by the grant of the citation, is so far conclusive, that it cannot be impeached in any collateral proceeding for the purpose of showing that the justice had not jurisdiction to summon the creditor, and to hear and to admit to the benefit of the oath, the debtor.

A former citation of the debtor not proceeded with by the justice issuing it, or dismissed by the two justices, when met upon the day appointed by it for the hearing, because the same was not served the number of days before the day of hearing required by the

Angell *v.* Robbins & others.

statute, is not such a withdrawal of, or trial upon that citation, as to require, under the 18th section of the above statute, a change of circumstances, before the debtor is entitled to summon his committing creditor upon another citation.

DEBT upon a bond, dated October 1, 1851, given by the defendant, Robbins, as principal, and by the other defendants, as his sureties, for the sum of two hundred and ten dollars, to be paid to the plaintiff.

Plea, in substance, upon oyer craved and given, that the condition of said bond was, that if the said Robbins, then a prisoner in jail in Providence county at the suit of the plaintiff, should thenceforth continue and be a true prisoner in the custody of Francis B. Lee, keeper of said jail, and of his deputy, officers and servants, or some one of them, within the limits of said jail, until lawfully discharged therefrom, without committing any manner of escape or escapes during the term of his restraint, the bond was to be void; and that Robbins did remain a true prisoner, without committing any escape until the 27th day of October, 1851, when he was discharged from jail by said Francis B. Lee, keeper of said jail, in pursuance of a certificate under the hands and seals of two justices of the peace in and for the city of Providence, (set forth in the plea,) showing that said Robbins had been admitted to take the poor debtor's oath.

Replication, in substance, that before said pretended discharge, and whilst Robbins was imprisoned upon execution for debt at the suit of the plaintiff, to wit, on the 26th day of September, 1851, he made application to one of the justices who granted said pretended discharge, for a citation to the plaintiff to show cause why said Robbins should not be admitted to the benefit of the poor debtor's act; which citation being duly served and returned, at a time to which the hearing thereon was duly adjourned, being the 10th day of October, 1851, said Robbins appeared before the justice of the peace who issued the citation and another justice of the peace for the city of Providence, who had full jurisdiction over his application, and who, after full hearing of the same, being divided in opinion, said Robbins was not admitted to the oath, but his application was dismissed; and the plaintiff averred, that the cause of this dis-

missal was, that said Robbins had been in the habit of, and was addicted to gambling, and no other cause; that afterwards, on the 11th day of October, 1851, the said Robbins, being still imprisoned upon the same commitment, applied to the justice of the peace who granted to him his pretended discharge, for a second citation to the plaintiff upon a similar application, which was issued by the justice, bearing the last named date, and made returnable on the 17th day of October, 1851, and served upon the plaintiff on the day it bore date, and that the only recital in said second citation of any pretended change of circumstances since the taking out and dismissal of the former citation was in the following words: " that since the taking out of any former citation on said execution, he, (to wit, the said Robbins,) has made an assignment of all his property, of whatever nature, except what is exempt from attachment by law, to Horace A. Manchester, for the benefit of the said Angell and one George C. Elliott, and hath also been compelled to provide for his own subsistence, which he is unable to do ;" that shortly before said pretended assignment to said Manchester, said Robbins had executed and delivered a general assignment of all his property, or of all not exempt from attachment by law, in trust for certain creditors, and no property, or but a merely nominal sum of money, of some three or four dollars, passed under, or was conveyed by said pretended assignment, and that said Manchester never assumed upon himself or acted under the trusts of said pretended assignment, any further than formally to take the deed and receive said nominal sum of three or four dollars; and the plaintiff averred, that the facts so recited in said second citation, if true, did not constitute any such change in the circumstances of said Robbins, since the taking out of his former citation, as is contemplated by the poor debtor's act; that said second citation was, after being served upon the plaintiff as aforesaid, returned, and the hearing thereon adjourned by said justice, but no further proceedings were had thereon; that afterwards, on the 18th day of October, 1851, the said Robbins, being still imprisoned upon the same commitment at the suit of the plaintiff, again applied to the same justice of the peace as last before, for a third citation to the plaintiff of like character,

which was issued by the justice and served upon the plaintiff; and that the only recital in said third citation of any pretended change of circumstances since the taking out of the former citation was in the following words, to wit: "And whereas said Robbins has made proof to me, that since the taking out of any former citation on said execution his circumstances have undergone a change, in that he has made an assignment to Horace A. Manchester of all his property, not exempt from attachment by law, for the benefit of said Daniel Angell and one George C. Elliott;" that upon the return of said citation, on the 27th day of October, 1851, the time named in said citation for hearing of the parties thereon, said Robbins appeared before said justice of the peace and another, who granted to him the pretended discharge set forth in the plea; that the assignment by Robbins, mentioned in said citation, if any was made, was the same assignment recited in said second citation, made after a general assignment by said Robbins of all his property as before stated, and constituted no such change of circumstances as contemplated by law, and that said discharge was unauthorized and void, and so that said Robbins escaped from said jail by availing himself thereof to leave said jail, not being legally discharged therefrom.

To this replication the defendants demurred generally, and the plaintiff joined in demurrer.

The action was originally brought at the court of common pleas for the county of Providence, and the demurrer having been sustained below, was now brought to this court by appeal.

*Browne*, for defendants, contended that the statute confides to the magistrate, to whom application is made for a new citation after the oath under a former citation has been refused, the power to hear and determine what constitutes a change of circumstances, so as to entitle the applicant to the new citation, just as much as it authorizes the two justices to hear and determine whether, upon the evidence submitted, he is entitled to the oath.

And this power to hear and determine, is jurisdiction; because it is a judicial power, and because the statute, in confid-

ing it to these justices, confers by that act itself, jurisdiction; *United States* v. *Arredondo et al.* 6 Peters, 691; *Parsons* v. *Blandy*, 22 Wightw. cited 2 Harrison's Dig. 7; *State* v. *Scott*, 1 Bailey, 294, cited 2 U. S. Dig. 674–5; and it is final unless an appeal be expressly given; *Parsons* v. *Blandy*, 22 Wightw. cited 2 Harrison's Dig. 7; *The King* v. *The Justices of Carnarvon*, 4 Barn. & Adol. 86.

The court of king's bench has no power to review the judgment of a court of quarter sessions, unless there be a case sent up for consideration; 4 B. & A. 86; and they will not go into any question not intended to be referred to them by such a case. *The King* v. *The Undertakers of the Aire, &c. Nav.* 2 T. R. 666. This is so, because the decision of the justices is deemed final; for the court will intend everything in the decision of justices to be right, which does not appear otherwise, and the court will not entertain a doubt where the justices did not. Buller's opinion, same case, 666.

And if there be ANY evidence *tending* to prove an offence over which a magistrate has a summary jurisdiction by conviction, the superior court cannot judge of the degree of it, or control the determination of the magistrate upon that evidence. *Rex* v. *Davis*, 6 T. R. 177; *Rex* v. *Thompson*, 2 T. R. 18.

And the court are desired to notice that in all these cases the proceedings were by *certiorari* or prohibition, and that even on these the court declined to interfere in any matter committed to the justices to hear and determine according to their own judgment, as the proof necessary for the granting of a new citation is. See also *The King* v. *J. Reason*, 6 T. Rep. 375.

Bacon's Abridgment, title Courts, D, art. 3, says, that the courts of Westminster exercise a general superintendency over all the other courts of the kingdom. Such is not our law. Here each court is, within its prescribed powers, equal to any other, and all depend chiefly on statute. *Yet even there, in the courts of Westminster, they have to exercise that power by prohibition, mandamus, certiorari, writ of review, or error.* See also, *John Kellogg, ex parte*, 6 Vermont, 609; *Keay* v. *Palmer*, 5 N. H. 43; *Hayward, petitioner*, 10 Pick. 358; *Miller* v.

*Brinkerhoff*, 4 Denio, 118; *Stanton* v. *Schell*, 3 Sandf. 323; *Horton* v. *Auchmuty*, 7 Wend. 200; *Gray* v. *McNeal*, 12 Georgia, 424.

*Tillinghast and Bradley*, for plaintiffs. The ground taken by the plaintiff's replication is, that on the issuing of the third citation, such a state of facts did not exist, as warranted the justices in exercising jurisdiction, in this, that on the issuing of the third citation, the proceedings whereon terminated in the discharge of Robbins, there was not the change of circumstances contemplated by the act of assembly; although it is recited in such third citation that such change had taken place. And it is now submitted, that notwithstanding such recital, if there were no change of circumstances in fact, the discharge of Robbins as above mentioned, was irregular, and could not constitute an answer to the plaintiff's demand in this action.

It is stated by Bacon respecting justices' courts, that they are bounded and circumscribed by certain laws and rules, to which, in all their proceedings and judicial determinations, they must square themselves. 2 Bacon's Abr. 625, tit. Courts, D. And this would seem especially the case, in regard to the matter in question. In cases like the present, nothing is left to the discretion of the justices. They derive their authority from the act of assembly by which their duties and course of proceeding are prescribed; and on reference to section 18 of the act for the relief of poor persons imprisoned for debt, it is clear, that the justices had only jurisdiction to issue the third citation in a given case, namely, on proof of a change of circumstances. If no such change of circumstances existed, it is also clear there could be no jurisdiction. The mere finding of the justices, that a change of circumstances had taken place, and the recital thereof in the third citation, is matter of indifference if no such change in fact had taken place; for magistrates cannot give themselves jurisdiction in a particular case, by finding that as a fact, which is not the fact; and the truth of their finding may be inquired into in a collateral proceeding. *Welch* v. *Nash*, 8 East, 394. In that case, which was an action of trespass for injuries to the plaintiff's land, the justices, acting under the English highway act, 13 Geo. 3, c. 78, had found certain facts,

upon which they had issued orders respecting a certain road, which were afterwards confirmed by the sessions on appeal; but it was held by the court, that the legality of such orders might be questioned in that action, notwithstanding they were confirmed as above, and stated facts to exist which did not exist. On referring to that case, the court will see that the same argument respecting the conclusiveness of the justices' proceedings, and that they might not be inquired into collaterally, was adopted by counsel, as is adopted for the defendant in this case. Numerous English authorities might be offered in support of the plaintiff's position and to the same effect as *Welch* v. *Nash,* but a few only may suffice.   In *Painter* v. *The Liverpool New Gas and Coke Co.* 6 Nev. & Man. 736, the legality of the magistrates' proceedings were also inquired into.   That was an action of trover.   The plaintiff's property had been seized and sold for gas-rent by virtue of a warrant issued by magistrates under the provisions of defendants' act of incorporation.   The defendants justified under the warrant, to which the plaintiff replied, that he had not been summoned before the issuing of the warrant.   The statute made no provision for a summons.   The warrant recited the plaintiff's conviction.   On the argument of the demurrer, on which judgment was rendered for the plaintiff, the main point of argument was, " whether or not, before granting the warrant set forth in the pleadings, the plaintiff ought not to have been summoned or warned to appear before the magistrate, to answer the complaint or to have appeared before him."

Now there is no practical difference between that case and the one in question.   Here the defendant, Robbins, is discharged by the justices, which fact is made the ground of defence in this action.   The plaintiff however, replies, as was done in the last cited case, the absence of such a state of facts, namely, a change of circumstances, as is required by law to give the justices jurisdiction to issue the third citation and to grant the discharge.   On the principle of the above cases, such replication, it should seem, is good; and if the allegations therein are true—that is, if there was no change of circumstances—the justices had no jurisdiction to issue the third citation, and grant

the discharge; and it is hard to conceive on what other ground it can be contended that they had jurisdiction. The fact is, what the justices profess to have done legally, as in the cases cited, the replication charges was done illegally; and therefore, on the authority of the same cases, the legality of the justices' proceeding may and should be inquired into in this action. In *Mason* v. *Baker*, 1 Carr. & K. 100, it was held, that where on a conviction, a summons is recited, such recital is evidence of it; but in an action against the convicting magistrate for false imprisonment, the plaintiff may show that there was no summons. See also *Stable* v. *Dixon*, 6 East, 163; *George* v. *Chambers*, 11 M. & W. 149; *Davison* v. *Gill*, 1 East, 64; all of which establish that the legality of magistrates' proceedings may be inquired into collaterally.

Again. It is no answer to the argument of the plaintiff, that the justices could not know the ground of the dismissal of the first citation. That might be said with more propriety in an action against the justice than in a proceeding against the defendant Robbins and his surety. The defendant Robbins was fully aware of the causes for which the first citation was dismissed, and it was his duty to inform the justice thereof, and of the new circumstances constituting the change.

But apart from the above observations and authorities, it is difficult to understand by what rule or upon what principle the determination of the justices in the case in question is conclusive upon the plaintiff in the present action. The operation and effect of the finding of the justices, if it operate at all as a conclusive bar, must be by way of estoppel.

Now, it is a most familiar doctrine, and one that is everywhere admitted by the courts as well of England as of this country, that matters that have once been determined by judicial authority, cannot again be drawn into controversy, as between parties or privies to the determination. But there can be no estoppel here; for the plaintiff in this case was neither party nor privy to the proceedings before the justices. Yet, whatever may ordinarily be the consequences of the doctrine of estoppel by record, it is seriously believed that such doctrine has never been extended to cases where the court exercising

authority had no jurisdiction of the subject. Now here it is said that the justices had no jurisdiction; and nothing is better settled in this country, following the English rule as exemplified by the foregoing cases, than that the jurisdiction of any court exercising authority over a subject may be inquired into in every other court where the proceedings of the former, as in this case, are relied on, and brought before the latter, by the party claiming the benefit of such proceedings. *Elliott* v. *Piersol,* 1 Pet. 340; *Wilcox* v. *Johnson,* 13 Pet. 511; *Lessee of Hickey* v. *Stewart,* 3 How. U. S. 750, and other cases. *Williams* v. *Burrill,* 10 Shep. 144; *Granite Bank* v. *Treat,* 6 Shep. 340.

BRAYTON, J.  The provisions of the act entitled "an act for the relief of poor persons imprisoned for debt," empowers any two justices of the peace to hear applications of a debtor to be admitted to the benefit of that act, and to adjudge and determine whether he is entitled to be admitted to take the oath prescribed in the act, and to admit him, if in their judgment he is so entitled. This they are empowered to do upon giving to the creditor seven days' notice of the time and place appointed for the hearing. This is not questioned; but the point here made is, whether the magistrates had jurisdiction of the person of the creditor, so as to enable them to hear the subject-matter of the application. It is admitted by the pleadings that the notice given was sufficient in point of time,—that it was more than seven days before the time appointed for the hearing,—that it was proper in point of form, containing the necessary statement of facts.

If the justice who issued the summons had jurisdiction of the process, and the summons be proper in point of form, and he give the seven days' notice which the act requires, it must be conceded, that the creditor was within the jurisdiction of the two justices, for all the purposes of a hearing upon the merit of the debtor's application.

The plaintiff insists, however, that the justice had no such jurisdiction, and that he was prohibited from issuing a citation in a case like this.

The plaintiff relies upon the 18th section of the act, (Digest of 1844, p. 171,) which provides as follows :—

" If a debtor take out a citation to his committing creditor, and has the same served, and subsequently withdraws the same, or if upon trial he shall not be admitted to take the oath prescribed in the eleventh section of this act, he shall not be entitled to another citation to the same creditor, unless on proof of some change of circumstances, after the taking out of the first citation; which change of circumstances shall be annexed to or recited in the second citation, and form part thereof."

By the provisions of this section, the debtor is prohibited from having, and the justice from issuing, a second citation to the same creditor, except upon certain conditions, viz: proof of a change of circumstances of the debtor since the former citation; and, consequently, as jurisdiction could be had only by means of the citation, and the citation is prohibited, no jurisdiction could be exercised by the magistrate without a compliance with the condition enforced. But if that condition be complied with, then may the citation legally issue, and upon due service thereof jurisdiction is obtained, not only over the subject-matter of the application, but over the person of the creditor.

The condition is, that the debtor shall submit to the justice proof of some change of circumstances since the taking out of the first citation. If he produce such proof, the magistrate is then authorized to summon the creditor, provided the magistrate recite in the citation the change of circumstances as to which the satisfactory proof is offered. The production of proof,—of evidence of any fact, implies an exercise of judgment thereon by the person to whom it is addressed. It is presented to him for that purpose, and his duty is to weigh and consider it. He is made the judge of it, and the sole judge. If, in his opinion, upon the proof, the change of circumstances has occurred, his duty is to issue the citation, and it becomes the right of the debtor to demand it. A power to hear and determine is jurisdiction. *United States* v. *Arredondo & others*, 6 Pet. 691; *Hayward, petitioner*, 10 Pick. 358; *Miller* v. *Brinkerhoff*, 4 Denio, 118.

Prior to the introduction of this section of the act, the debtor was at liberty to make as many successive applications as he

chose; and being denied the benefit of the act by one set of magistrates upon trial, might still make his application to others, until he could obtain a more favorable result. This provision was intended as a check upon this practice of the debtor to harass his creditor by repeated applications, when the magistrates, upon a hearing and trial, had decided his case against him. This was to be done by vesting in a single justice, upon a second application, a power to grant or refuse a second summons to the creditor, upon proof to be submitted to him by the debtor; leaving it for him to determine if the condition be complied with, and whether it be a proper case in which to bring the creditor again within the jurisdiction of the two magistrates. Necessarily, he must be the sole judge of this; and as he determines, so are the parties bound. It can be submitted to no one else.

It is objected, that if the intent of the act was that the single justice should hear and determine what constituted a change of circumstances, it cannot be intended that the power should be exercised *ex parte;* that, upon a matter so important to the creditor, he has a right to be heard; and that if this hearing is final, he is deprived of that right.

If it were true that every party had a right to know and be informed of every preliminary step taken in the cause by the other party, this objection would have some force. But the right to be fully heard has never been held to extend beyond those questions which affect the merits of the cause. Clearly, this preliminary hearing was designed to be *ex parte,* as the finding of a grand jury is; this provision of the act being designed as a relief to the creditor from being harassed without reasonable cause. It cannot operate to his relief, unless it be *ex parte;* and if the creditor is to have the right to be heard in reply to this preliminary proof, he may be harassed just as often as the debtor chooses to say that there is a change of circumstances. To prevent this, the statute says he shall first satisfy one of the justices, by proof, that a change of circumstances has occurred, just as in a case of indictment, twelve men must be first satisfied of the justice of the charge preferred; and upon this condition the trial may be had, and upon no

other. The indictment, in the one case, does not conclude the prisoner upon the question of his guilt, but he is concluded only upon the question of jurisdiction as to whether process properly issued. So in this case, the creditor is not concluded further than that the summons properly issued, so as to bind him to answer the application of the debtor. No right of his is impaired.

The justice may err in judgment upon the evidence, and may fail to relieve the creditor from a hearing when, it may be, he ought not to be called upon to defend, and so, fail to come up to the spirit of the act; but his error of judgment is a matter which cannot be reached in any collateral proceeding.

The plaintiff, in argument, insists that the change of circumstances necessary to be proved to the justice contemplated by the act, is a charge affecting the discharge of the debtor; i. e. such as ought to influence the magistrates, on a hearing of the merits of the case, in granting the application. He does not contend that the making of the assignment, as set forth in the citation, which the justice certifies was proved to him, may not be a change of circumstances in the debtor affecting his discharge. This position he expressly declines to take; but contends, that under the facts disclosed in the replication, viz: that nothing passed by the assignment, or a mere nominal amount, and that the assignee did not assume to execute the trust further than to receive such nominal sum, there could not be such a change as could affect the merit of the debtor's application.

Are these facts, as set forth in the replication, as to the assignment, or as to what passed by it, and as to the conduct of the assignee, well pleaded, so that we can take notice of them? The justice had full jurisdiction to judge whether the change of circumstances had occurred. Were the facts, now stated, before him, when he came to his conclusion? If they were, he has passed his judgment upon them. That judgment cannot be reviewed collaterally; and we cannot reëxamine the evidence, and reverse his judgment. This can only be done by some direct proceeding for the purpose of reversal. *Stanton* v. *Schell,* 3 Sandf. 323; *Horton* v. *Auchmuty,* 7 Wend. 200; *Hay-*

*wood, petitioner,* 10 Pick. 358; *Miller* v. *Brinkerhoff,* 4 Denio, 118; *Rex* v. *Davis,* 6 T. R. 177; *Rex* v. *Thompson,* 2 T. R. 18.

If they were not before the justice, then, in effect, the plaintiff calls upon us, not merely to review that decision, but to do so in the light of other proof than that which was before him. This is equally against the rules of law. We cannot review, either upon the same proof, or upon additional evidence, the determination of a competent tribunal, upon a subject within its jurisdiction. The facts, therefore, which the plaintiff would have the court here consider, are such as are not properly pleaded; and we are not at liberty to take notice of them.

It is admitted by the replication that proof was offered to the justice,—that he determined upon that proof that there had been a change of circumstances, viz: that the debtor had made the assignment stated by him,—and that the citation thereupon issued, and was duly served. The *single* justice having juris-diction over this process, and having jurisdiction to hear the evidence and determine whether a change of circumstances had occurred, and having adjudged that it had, that determination is conclusive and final, not only in that proceeding, but, as to these parties, in every other proceeding.

Nevertheless, it is open upon the hearing of the debtor's application upon the merits before the *two* magistrates, whether, under all the circumstances which may be shown upon such hearing, there has been such material change of the debtor's circumstances, as would entitle him to a discharge under the act. The justice is required in the citation to the creditor to recite the change, as to which proof was offered, that the cred-itor may have notice, and be prepared to meet it by proof, at the hearing upon the merits.

We have not thus far taken notice of the second application of the debtor, and the citation thereon, as alleged in the replica-cation; and have treated the subject as if the second citation had not issued, and as if the change had taken place between the first and the third citation upon which the debtor was dis-charged. Upon the proper construction of the 18th section of the poor debtor's act, we think that the second citation did not affect the rights of the parties in any respect. This section

prohibits the debtor from having a second citation only in cases, where, having had his citation served upon the creditor, he subsequently *withdraws* the same, or where, upon trial, he shall not be admitted to take the oath. In this case, as stated in the replication, there was no trial, and therefore that alternative did not occur. Neither was it withdrawn in any proper sense, within the meaning of this section. The notice in this case was insufficient in point of time. Upon it the creditor was not bound to appear, and he did not appear to waive any right of his. The justice felt that he had no authority to proceed to a hearing; the citation being a ministerial act necessary to give jurisdiction to the magistrates and not conforming to the law. A withdrawal implies something more than a mere passive submission to the act of the justice. It implies some act of the debtor, taking the subject-matter from the consideration of the magistrates. The replication discloses no act of the debtor to avoid a trial of the merits of his application. It simply states, that nothing further was done after the service of the citation. It does, however, disclose a sufficient reason why the justice, of his own motion, should decline to proceed, without any action of the debtor either way, and even against his wish to proceed to a hearing. If the creditor had appeared and taken the objection that the notice was insufficient, and the justices had thereupon dismissed the application, the debtor would stand in the same position. His citation would neither be withdrawn, nor would he be denied the oath upon trial. It would be simply determined, by the justices, that he had no right now to be heard, because the parties were not properly before them.

*Demurrer  sustained.*